UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| WESLEY E. CRAWFORD and <br> COLLEEN A. CRAWFORD, <br><br> Plaintiffs, <br><br> v. <br><br> COMMUNITY HEALTH SYSTEMS, INC. *et al.*, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) No.: 3:24-CV-382-TAV-DCP <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION AND ORDER

This civil matter is before the Court on a Report and Recommendation ("R&R") issued by United States Magistrate Judge Debra C. Poplin on March 18, 2025 [Doc. 47]. In the R&R, Judge Poplin granted plaintiffs' application to proceed *in forma pauperis* [Doc. 5]. Additionally, after screening the complaint, Judge Poplin recommends that the Court dismiss plaintiffs' claims for Emergency Medical Treatment and Labor Act ("EMTALA") violations as against individual defendants, Health Insurance Portability and Accountability Act ("HIPAA") violations, and negligence relating to "COVID Candidate Misrepresentation" for failure to state a claim on which relief can be granted. Judge Poplin recommends that all other claims be allowed to proceed beyond screening.

Defendants Daniel A. Baker, M.D., Marcia Williams-Lyons, D.O., Abercrombie Radiology Consultants, Inc., and Renal Medical Associates, P.C. (collectively, the "Abercrombie defendants") filed objections to the R&R on March 31, 2025, arguing that

the Court should dismiss all of plaintiffs' state law claims [Doc. 48 (as amended by Doc. 49)]. Plaintiffs responded to the Abercrombie defendants' objections [Doc. 50].

Defendants Metro Knoxville HMA, LLC d/b/a Tennova Healthcare North Knoxville Medical Center; Bill Rich; Drew Grey; Colin McRae; Joshua Whitfield, RN; Laura Franklin; Linda David; Tina Carpenter; Emily Lawson Henry, RN; Eric J. Yopp, RN; Linda Marie Lindsay, PharmD; Vivian F. Rives; and Yoram A. Roman-Casul, MD (collectively, the "Tennova defendants") filed objections to the R&R [Doc. 51]. The Tennova defendants join the Abercrombie defendants' objections [*See* Doc. 48 (as amended by Doc. 49)] and raise additional arguments in support of dismissal. Plaintiffs responded to the Tennova defendants' objections [Doc. 53].

Defendants Community Health Systems, Inc.; CHS/Community Health Systems, Inc.; CHSPSC, LLC; Revenue Cycle Services Center, LLC; Professional Account Services, Inc.; Knoxville HMA Holdings, LLC; Arkansas HMA Regional Services Center; and Carol Lilly (collectively, the "Corporate defendants") filed additional objections to the R&R, joining in the Abercrombie defendants' and Tennova defendants' objections [Doc. 52]. Plaintiffs responded to the Corporate defendants' objections on April 7, 2025 [Doc. 54].

On April 15, 2025, after the 14-day period provided for objections to the R&R expired [*See* Doc. 47, p. 27 n.25], defendants Michael S. Shroeder, M.D. and Eustacia Pratt, M.D. filed a notice joining the objections previously filed by the Tennova and

2

Corporate defendants [Doc. 55]. Plaintiffs filed a motion to strike this notice on grounds of untimeliness [Doc. 56].

For the reasons that follow, defendants' objections [Docs. 48 (as amended by Doc. 49), 51, 52, 55] will be **SUSTAINED in part** and **OVERRULED in part**, and the Court **ACCEPTS** and **ADOPTS in part** the R&R [Doc. 47]. Plaintiffs' motion [Doc. 56] will be **DENIED as moot**.

I.  Background

This action arises from events related to plaintiff Wesley E. Crawford's treatment in the emergency department at Tennova Healthcare, North Knoxville Medical Center ("Tennova North") from November 27 to 29, 2022 [*See* Doc. 1]. Given that no party has objected to the detailed Summary of the Complaint contained in the R&R, the Court **ACCEPTS** and **ADOPTS** this portion of Judge Poplin's R&R. The Court refers the parties to Judge Poplin's thorough discussion of the legal claims alleged in plaintiffs' Complaint, but briefly restates the following factual background:

> The Complaint alleges that Mr. Crawford became ill after eating a Thanksgiving dish on November 24, 2022 [*Id*. at 28]. His sickness progressed over the next couple of days, and on November 27, 2022, Mrs. Crawford drove him to Tennova North [*Id*.]. While there, Plaintiffs allege that Mrs. Crawford's request that Mr. Crawford be tested for food poisoning was ignored even though his symptoms "were identical to the symptoms of Shiga toxin E. coli food poisoning" [*Id*. at 40]. They state that no stool cultural lab test was ordered to identify what was causing Mr. Crawford's symptoms [*Id*. at 44–45, 372]. Plaintiffs succinctly summarize that "the gravamen of the negligence alleged in [their] complaint is that Mr. Crawford's kidneys were being attacked by Shiga toxin E. coli food poisoning; and in order to treat this type of food poisoning, fluids were needed for hydration; and, avoidance of antibiotics was necessary; and yet, fluids were not administered, and antibiotics known to cause kidney injury

3

were administered to [Mr. Crawford, who] had an emergency medical condition of acute renal failure" [*Id*. at 381]. Plaintiffs assert, among other things, that while at Tennova North, Mr. Crawford was treated like a patient suffering from a drug overdose rather than food poisoning [*id*. at 49–50, 67]; he did not receive adequate fluids, and no attempt was made to transfer him to a hospital that could treat dehydration [*id*. at 52–56, 58–59, 62–63]; his physicians and nurses were not supervised [*id*. at 59, 129]; Tennova North did not ensure the appropriateness of his individualized plan of care [*id*. at 60]; he was restrained to a gurney without fluids for an extended period of time [*id*. at 57–58, 61, 65, 68]; a food poisoning test/stool culture lab test was not performed [*id*. at 66, 68, 70]; the actions of the emergency team in not administering adequate fluids "caus[ed] his kidneys to shut down to only 26% use" [*id*. at 68]; and he was given "meningitis antibiotic treatment" and suffered acute renal failure [*id*. at 69–73]. Plaintiffs state that Mr. Crawford was "unstabilized for more than 41 hours, and . . . forced to receive drugs that damage kidneys, while . . . in acute renal failure" and assert that had a stool culture test been performed to identify the type of bacteria causing his symptoms, the "entire [emergency] team would have known not to administer the drugs they gave him" [*Id*. at 85]. They allege that he was prematurely discharged [*id*. at 102–104], specifically "while he was infected with Shiga toxin E. coli food poisoning, and C. diff, and while his kidneys were failing" [*id*. at 104].

[Doc. 47, pp. 6–7].

## II. Legal Standard

This Court reviews *de novo* those portions of the magistrate judge's report and recommendation to which a party objects, unless the objections are frivolous, conclusive, or general. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Smith v. Detroit Fed'n of Tchrs.*, 829 F.2d 1370, 1373 (6th Cir. 1987); *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). "The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Mira*, 806 F.2d at 637 (internal quotation marks omitted). A general objection, in contrast to a specific objection, "has the same effect[ ] as would a failure to object." *Howard v. Sec'y of Health & Human*

*Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). In other words, a litigant must identify each issue in the report and recommendation to which the litigant objects with sufficient clarity such that the Court can identify it, or else that issue is deemed waived. *See Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."); *see also Thomas v. Arn*, 474 U.S. 140, 147 (1985) (stating that objections must go to "factual and legal" issues "at the heart of the parties' dispute").

In addition, if "objections merely restate the arguments asserted in [a party's] earlier motion, which were addressed by the magistrate judge's report and recommendation, the Court may deem those objections waived." *Modrall v. U.S. Dep't of Educ.*, No. 1:19-cv-250, 2020 WL 2732399, at *2 (E.D. Tenn. May 26, 2020) (citing *VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004)).

The Court is mindful that because plaintiffs are proceeding *pro se*, their pleadings should be liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). But plaintiffs' *pro se* status does not exempt them from the requirement of complying with relevant rules of procedural and substantive law. *See Felts v. Cleveland Hous. Auth.*, 821 F. Supp. 2d 968, 970 (E.D. Tenn. 2011).

### III.   Analysis

The Court notes at the outset that no party has objected to Judge Poplin's recommendation that many of plaintiffs' original claims be dismissed; rather, plaintiffs

5

have responded in opposition to defendants' various objections that argue for further dismissal of the remaining EMTALA claim against Tennova North and the state law claims. Therefore, in light of the lack of objection, the Court **ACCEPTS** and **ADOPTS** the portion(s) of Judge Poplin's R&R that recommend dismissal of all claims except the EMTALA and state law claims. All claims except the EMTALA claim against Tennova North and the state law claims are hereby **DISMISSED**.

Having adopted most of the R&R's dismissal recommendations, the issues remaining before the Court are whether (i) the EMTALA claim against Tennova North and/or (ii) the state law claims are also due to be dismissed. Given that the EMTALA claim is the primary basis for the court's subject-matter jurisdiction as it arises under a federal statute, the Court will first address defendants' objections related thereto.

### A. Objections Regarding the EMTALA Claim against Tennova North

Judge Poplin narrowed this claim by recommending that any individual defendants be dismissed because EMTALA does not authorize a private right of action against individuals [Doc. 47, pp. 19–20]. The Abercrombie defendants do not appear to object to Judge Poplin's recommendation that plaintiffs' EMTALA claim proceed past the screening stage as to defendant Tennova North; rather, they argue that the Court should decline to exercise supplemental jurisdiction over the state law claims [Doc. 49]. Tennova defendants, on the other hand, argue that Judge Poplin should have recommended dismissal of plaintiffs' EMTALA claim in its entirety because it "is

6

nothing more than a state law medical malpractice claim, governed by the THCLA" [Doc. 51, p. 9]. The Corporate defendants join in these objections [Doc. 52, p. 3].

Specifically, the Tennova and Corporate defendants first contend that EMTALA does not allow for claims that a hospital engaged in a faulty screening or did not provide a specific type of medical screening; rather, they submit that EMTALA liability is limited to whether appropriate screening measures were provided [Doc. 51, p. 10]. Next, they argue that plaintiffs have failed to plead a stabilization claim under EMTALA for similar reasons, noting that the purpose of EMTALA is to prevent hospitals from improper transfer of patients to another facility [*Id*. at 11–12].

Plaintiffs do not appear to contest Judge Poplin's recommendation that their EMTALA claim be dismissed as to individual defendants [Doc. 53, p. 29]. However, they do oppose defendants' objections with respect to their EMTALA claim against Tennova North [*Id*. at 31]. Specifically, they argue that "their [*sic*] remains a genuine issue of material facts as to whether or not Tennova North provided an adequate screening, stabilization, or that risks involved in keeping Mr. Crawford strapped to a gurney without an adequate screening or stabilization of his EMCs (for several hours) outweighed the risks of transferring him to another facility" [*Id*.].

The Court first reiterates that plaintiffs' *pro se* pleadings should be liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *See Erickson*, 551 U.S. at 94. While this construal does not exempt them from the requirement of complying with relevant rules of procedural and substantive law, *see*

7

*Felts*, 821 F. Supp. 2d at 970, the Court agrees with Judge Poplin that "[p]laintiffs set forth claims that Defendant Tennova North did not appropriately screen, stabilize, or transfer Mr. Crawford per EMTALA" [Doc. 47, p. 19]. Specifically, in their Complaint, plaintiffs cite statutory requirements with which Tennova North allegedly did not comply [Doc. 1, pp. 201–14]. At times, their allegations appear to conform to the legal standard urged by the Tennova defendants in their objection [*See* Doc. 51, p. 10 (citing 42 U.S.C. § 1395)]; that is, plaintiffs appear to allege that Mr. Crawford "was treated differently than the standard of care other patients received" [Doc. 1, p. 214]. Although their Complaint does contain some allegations that would not sound under EMTALA, the Court's liberal construal of *pro se* pleadings dictates that they be afforded an opportunity to amend and clarify the nature of this claim. *See Erickson*, 551 U.S. at 94.

Ultimately, the Court **OVERRULES** defendants' objections [Docs. 53, 54] to this portion of the R&R and **ACCEPTS** and **ADOPTS** this portion of Judge Poplin's R&R. Accordingly, plaintiffs' EMTALA claim against Tennova North will be permitted to proceed.

B. **Objections Regarding the Tennessee Claims**

Defendants raise several objections to the R&R's recommendation that plaintiffs' state law claims proceed, including on grounds of supplemental jurisdiction and the

8

applicable statute of limitations.[1]  Because the Tennessee statute of limitations, if applicable to these claims, is dispositive, the Court begins its analysis there.

The R&R sets forth the legal standards governing the Tennessee Healthcare Liability Act ("THLA"), which Judge Poplin determined apply to plaintiffs' state law claims [*See* Doc. 47, pp. 21–25].  The parties do not appear to object to this determination of the R&R at least insofar as the THLA governs plaintiffs' state claims in the first instance [*See* Docs. 48 (as amended by Doc. 49), 51, 52, 55].  The Court therefore **ACCEPTS** and **ADOPTS** this portion of Judge Poplin's R&R.

The THLA provides for a one-year statute of limitations.  *See* Tenn. Code Ann. § 29-26-1169(a)(1).  In cases where, as here, "the alleged injury is not discovered within such one-year period, the period of limitation shall be one (1) year from the date of such discovery." *Id*. § 29-26-1169(a)(2).  As the United States District Court for the Middle District of Tennessee has explained, "a medical malpractice cause of action accrues when one discovers, or in the exercise of reasonable diligence should have discovered, both (1) that he or she has been injured by wrongful or tortious conduct and (2) the identity of the person or persons whose wrongful conduct caused the injury." *Moody v. Foster*, No. 3:20-CV-1086, 2023 WL 2505897, at *5 (M.D. Tenn. Mar. 14, 2023), *aff'd*, No. 23-5317, 2024 WL 4529702 (6th Cir. Apr. 29, 2024) (quoting *Sherrill v. Souder*, 325

---

[1] The Court notes at the outset that Judge Poplin did not have occasion to evaluate the applicable statute of limitations during her screening of the complaint and issuance of the R&R because this issue was first raised by way of defendants' objections.

9

S.W.3d 584, 595 (Tenn. 2010)).  Critically, "[a]ctual knowledge of tortious conduct is not required before a medical malpractice claim accrues."  *Sherrill*, 325 S.W.3d at 596.

The Tennova defendants argue that the THLA's statute of limitations bars plaintiffs' state law claims in this case [Doc. 51, pp. 5–8].  Specifically, they contend that plaintiffs filed their instant suit on September 9, 2024, which they argue occurred after the lapse of the one-year statute of limitations governing their claims [*Id*. at 5].  According to these defendants, "[n]o matter if . . . knowledge of the injury came to light on November 29, 2022; December 5, 2022; or January 20, 2023, it occurred well over a year before plaintiffs filed suit" [*Id*. at 7].  The Corporate defendants join in this objection [Doc. 52, p. 3].

In response, plaintiffs argue that Mr. Crawford's injury was discovered on September 10, 2023, and their complaint was therefore timely filed in accordance with the THLA [Doc. 53, p. 9; *see also* Doc. 54, p. 5].  They contend that they lacked "knowledge" about the nature of Mr. Crawford's injuries until he collapsed in 2023, at which time they connected the alleged damage caused by his prior treatment to the condition(s) affecting his kidneys [*Id*. at 16].

Upon careful review of the timeline contained in plaintiffs' complaint, the Court finds that their state law claims are time-barred by the THLA.  *See Alverson v. Am. Nat. Ins. Co.*, 30 F. App'x 491, 494 (6th Cir. 2002) (holding that determination of whether a claim is time-barred by a statute of limitation is a question of law).  Although plaintiffs assert in their complaint and subsequent briefing that Mr. Crawford's "injury was

10

Case 3:24-cv-00382-TAV-DCP   Document 57   Filed 05/08/25   Page 10 of 14
PageID #: 736

discovered September 10, 2023" [Doc. 1 ¶ 43], the United States Court of Appeals for the Sixth Circuit had held that courts evaluating a Tennessee statute of limitations defense should look to the "gravamen" of the action, bearing in mind the inquiry notice facet of Tennessee's discovery rule.  *See Alverson*, 30 F. App'x at 494.  So, the Court must evaluate the substantive facts alleged in support of plaintiffs' state law claims to determine whether their allegations, if proven true, comply with the statute of limitations under the THLA [*See* Doc. 47, p. 3 (first quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); and then *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) ("To survive an initial review under the [Prison Litigation Reform Act], a complaint 'must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'")].

According to their own account of the relevant events, plaintiffs were on inquiry notice more than one year before filing their suit.  In their complaint, plaintiffs allege that Mr. Crawford first contracted food poisoning from a Thanksgiving meal on November 24, 2022 [Doc. 1, p. 28].  Even during their earliest interactions with medical providers, Ms. Crawford allegedly conveyed her concern regarding misdiagnosis and/or mistreatment, including for example a note dated November 27, 2022, in which she appears to have expressed concern about food poisoning [*Id*. at 44].  They further allege that as of November 28, 2022, "knowledge of food poisoning concerns and the Thanksgiving meal was very well documented, but also ignored, while the physicians, nurses, and pharmacist carried out their own agenda to test drugs on him to see 'what

11

Case 3:24-cv-00382-TAV-DCP   Document 57   Filed 05/08/25   Page 11 of 14
PageID #: 737

might work'" [*Id*. at 86]. Later, after collecting a biological sample on or about December 13, 2022, plaintiffs sent a laboratory report to some defendants on January 20, 2023, indicating the presence of Shiga Toxin bacteria, which allegedly confirmed their suspected diagnosis since the onset of Mr. Crawford's illness on November 24, 2022 [*Id*. at 175, 253].

Even interpreting the timing of these events in the light most favorable to plaintiffs, their cause(s) of action accrued no later than January 20, 2023, when they confirmed the presence of Shiga Toxin bacteria and directly informed defendants of the same. By that date, at a minimum, "in the exercise of reasonable diligence [one] should have discovered, both (1) that he or she has been injured by wrongful or tortious conduct and (2) the identity of the person or persons whose wrongful conduct caused the injury." *Moody*, 2023 WL 2505897, at *5 (quoting *Sherrill*, 325 S.W.3d at 595). Notably absent from Tennessee's discovery rule is any requirement that plaintiffs know the extent or scope of potential consequences emanating from the wrongful or tortious conduct that they suspected. Indeed, contrary to many of plaintiffs' assertions about the date on which they "knew" or "were aware" of the extent of Mr. Crawford's injuries, "[a]ctual knowledge of tortious conduct is not required before a medical malpractice claim accrues." *Sherrill*, 325 S.W.3d at 596.

So, the latest possible date on which plaintiffs could have filed suit according to the facts alleged in support of their state law claims was January 20, 2024, or one year after the accrual of their cause(s) of action. *See* Tenn. Code Ann. § 29-26-1169(a)(1).

12

Yet plaintiffs did not file the instant suit until September 9, 2024 [*See* Doc. 1]. And, under the pleading standards previously announced by Judge Poplin in her R&R, plaintiffs have not alleged sufficient factual content to contradict this straightforward application of the statute of limitations to their state law claims [*See* Doc. 47, p. 3]. Accordingly, defendants' objections to this effect [Docs. 51, 53, 55] are **SUSTAINED**, and plaintiffs' state law claims are hereby **DISMISSED**. In light of this ruling, defendants' remaining objections regarding the state law claims [*See* Doc. 49, pp. 7–9; Doc. 51, pp. 3–4, 14–25; Doc. 52, pp. 2–3] are **OVERRULED as moot**.

IV. Conclusion

For the reasons above, defendants' objections [Docs. 48 (as amended by Doc. 49), 51, 52, 55] are **SUSTAINED in part** and **OVERRULED in part**, and the Court **ACCEPTS** and **ADOPTS in part** the R&R [Doc. 47]. Plaintiffs' complaint is **DISMISSED** as to all claims and defendants except for their EMTALA claim against Tennova North. The Court reiterates Judge Poplin's note in the R&R stating that a claim's proceeding past the screening stage "does not preclude any Defendant from filing a motion to dismiss" [Doc. 47, p. 28 n.26 (quoting *Bawcom v. Roades*, No. 3:22-CV-923, 2023 WL 425376, at *4 (M.D. Tenn. Jan. 26, 2023))]. Given the above analysis, whether the Court construes defendants Schroeder and Pratt as having joined [*See* Doc. 55] the previously filed defendants' objections is immaterial; therefore, plaintiffs' motion to strike [Doc. 56] is **DENIED as moot**.

13

Finally, in light of the foregoing, plaintiffs are hereby **ORDERED** to file an amended complaint consistent with this Memorandum Opinion and Order. Specifically, their amended complaint: (i) shall not exceed 20 pages without prior authorization from the Court; and (ii) shall contain only those allegations plaintiffs deem necessary to support their remaining claim against the remaining defendant.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

14

Case 3:24-cv-00382-TAV-DCP    Document 57    Filed 05/08/25    Page 14 of 14
PageID #: 740