UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| WESLEY E. CRAWFORD and<br>COLLEEN A. CRAWFORD,<br><br>      Plaintiffs,<br><br>v.<br><br>METRO KNOXVILLE HMA, LLC, d/b/a<br>TENNOVA HEALTHCARE—NORTH<br>KNOXVILLE MEDICAL CENTER,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)   No.: 3:24-CV-382-TAV-DCP<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

Before the Court are plaintiffs' Motion for Reconsideration of Court's Order [Doc. 59], Motion for Leave to File Supplemental Brief [Doc. 68], Motion to Compel Preliminary Relief [Doc. 76], Motion to Appoint Colleen Crawford as Next Friend for Wesley Crawford [Doc. 81], and Motion to Stay Discovery Pending Resolution of Pending Motions and Service of Summons [Doc. 82]. Also pending before the Court are defendant's Motion to Dismiss Plaintiffs' First Amended Complaint [Doc. 65] and Motion for Clarification [Doc. 70 (as amended by Doc. 71)]. The parties have responded to the opposing party's various motions [Docs. 61, 62, 63, 64, 67, 69, 72, 78, 79, 83]. Accordingly, these matters are ripe for the Court's review. *See* E.D. Tenn. L.R. 7.1(a).

For the reasons explained below, plaintiffs' Motion for Reconsideration of Court's Order [Doc. 59] will be **DENIED**, defendant's Motion to Dismiss Plaintiffs' First Amended Complaint [Doc. 65] will be **GRANTED**, the remaining pending motions [Docs. 68, 70, 76, 81, 82] will be **DENIED as moot**, and this case will be **DISMISSED**.

## I. Background

This action arises from events related to plaintiff Wesley E. Crawford's treatment in the emergency department at Tennova Healthcare, North Knoxville Medical Center ("Tennova North") from November 27 to 29, 2022 [*See* Doc. 1]. The Court presumes familiarity with the factual background and legal issues of this case [*See* Docs. 47, 57, 90].

On May 8, 2025, the Court entered a Memorandum Opinion and Order dismissing all claims and defendants except for plaintiffs' Emergency Medical Treatment and Labor Act ("EMTALA") claims against defendant Tennova North [Doc. 57, p. 13]. The Court reasoned that, given its obligation to construe *pro se* pleadings liberally, plaintiffs should "be afforded an opportunity to amend and clarify the nature of this claim" [*Id*. at 8]. To that end, the Court further ordered plaintiffs to file an amended complaint [*Id*. at 14], which they did on May 21, 2025 [Doc. 60].

Before filing their amended complaint, however, plaintiffs moved the Court on May 11, 2025, to reconsider its Memorandum Opinion and Order [Doc. 59]. Specifically, they argue that the Court erred in dismissing certain counts and defendants [*Id*.]. While that motion remained pending, defendant moved to dismiss plaintiffs' amended complaint [Doc. 65]. Most recently, the Court entered a Memorandum Opinion and Order denying plaintiffs' recusal request and staying this case pending the Court's adjudication of the instant pending motions [Doc. 90]. Given this procedural posture, the Court will begin by addressing plaintiffs' reconsideration motion; then, it will turn to defendant's motion to dismiss.

## II. Plaintiffs' Motion for Reconsideration [Doc. 59]

### A. Background

Plaintiffs move the Court pursuant to Federal Rule of Civil Procedure 59(e) to reconsider its Memorandum Opinion and Order dismissing their state law claims [Doc. 59, p. 1]. They argue that the Court committed "clear errors" in (i) determining that they were on inquiry notice by January 20, 2023; and (ii) misapplying the THLA's one-year statute of limitations to contract and battery claims [*Id*. at 3]. In support, they allege misrepresentation on defendant's part that concealed the tolling of the THLA limitations period [*Id*. at 4–5].

Defendant Tennova responds by arguing, *inter alia*,[1] that plaintiffs fail to identify a manifest error of law or fact sufficient to warrant reconsideration [Doc. 61, p. 7]. Specifically, it contends that plaintiffs do not cite any law or precedent in support of their reconsideration arguments; instead, they reargue points that were previously presented to the Court [*Id*. at 9]. Further, defendant cites case law in support of the Court's prior holding that plaintiffs' state law claims are subject to the THLA's statute of limitation [*Id*. at 10].

The Corporate defendants, now dismissed from this action, also respond in opposition to plaintiffs' motion for reconsideration [Doc. 63], joining in Section B of

---

[1] Defendant also alleges that plaintiff Colleen A. Crawford has engaged in the unauthorized practice of law [Doc. 61, pp. 3–7], to which plaintiffs reply [Doc. 62, pp. 2–3; *see also* Doc. 68-1, pp. 1–2]. Defendant subsequently requested that the Court "disregard all assertions of engagement in the Unauthorized Practice of Law at this time pending resolution" of the motions to reconsider and dismiss [Doc. 70, p. 2]. The Court finds it unnecessary to address these matters as independent grounds exist to resolve this motion.

3

defendant Tennova's response. They argue that plaintiffs have failed to identify new evidence or manifest error on the Court's part sufficient to warrant reconsideration [*Id*. at 3–6]. Of note, they appear to identify that one of plaintiffs' purported citations from this District arose, instead, in the Idaho Supreme Court [*Id*. at 4].

Plaintiffs reply to both sets of responses, reiterating that the Court committed clear errors on the two bases previously discussed, as well as alleging that new evidence regarding Tennova's data loss warrants reconsideration [Docs. 62, 64].

### B. Legal Standard

Federal Rule of Civil Procedure 59(e) provides that a party may move to alter or amend a judgment within 28 days of the entry of the judgment. *See* Fed. R. Civ. P. 59(e). Rule 59(e) permits a court to alter judgment based on "(1) a clear error in law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (internal quotation marks omitted). A party should state with clarity the basis for its motion, but where the facts and law are clear, the court will apply the appropriate ground. *Intera Corp. v. Henderson*, 428 F.3d 605, 621 (6th Cir. 2005). A district court has "considerable discretion" in deciding whether to grant a Rule 59(e) motion. *Leisure Caviar, LLC*, 616 F.3d at 615. However, a Rule 59(e) motion "run[s] contrary" to notions of "finality and repose," and therefore, is "generally discouraged" and "afford[s] relief only under extraordinary circumstances." *Polzin v. Barna & Co.*, No. 3:07-CV-127, 2007 WL 4365760, at *3 (E.D. Tenn. Dec. 11, 2007).

4

### C. Analysis

Upon careful review of the parties' arguments and the Court's prior Memorandum Opinion and Order, the Court declines to reconsider its decision. When the Court determined that "plaintiffs were on inquiry notice more than one year before filing their suit," it expressly "interpret[ed] the timing of these events in the light most favorable to plaintiffs," and nevertheless found that "their cause(s) of action accrued no later than January 20, 2023, when they confirmed the presence of Shiga Toxin bacteria and directly informed defendants of the same" [Doc. 57, pp. 11–12]. Plaintiffs have not adduced new or contradictory evidence that would otherwise disturb this conclusion.

As for their argument regarding the scope of the THLA, the Court specifically noted that "[t]he parties do not appear to object to [the R&R's finding that] the THLA governs plaintiffs' state claims in the first instance" [*Id*. at 57 (citing Docs. 48 (as amended by Doc. 49), 51, 52, 55)]. The Honorable Debra C. Poplin, United States Magistrate Judge, aptly discussed the THLA's coverage of plaintiffs' state law claims in her original Report and Recommendation, including contract and battery claims [*See* Doc. 47, pp. 23–24]. Plaintiffs never objected to this determination, which the Court ultimately adopted [*See* Doc. 57], until their instant motion, which, as defendant notes also fails to identify legal support for the proposition that the Court erred as to this finding.

In sum, plaintiffs' Motion for Reconsideration of Court's Order [Doc. 59] is **DENIED** and the Court will proceed to evaluate the remaining pending motions under the

posture established by its prior Memorandum Opinion and Order [Doc. 57]. That is, only one count against one defendant remains under consideration.

### III. Defendant's Motion to Dismiss Plaintiffs' Amended Complaint [Doc. 65]

#### A. Background

Defendant moves to dismiss plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that they fail to state a claim under EMTALA [Doc. 66, p. 1]. Specifically, it contends that despite plaintiffs' attempt to style their claim as one arising under EMTALA, it is fundamentally a healthcare liability claim that must be brought in state court [*Id*. at 5]. The "crux" of plaintiffs' complaint, according to defendant, is "Tennova North's alleged failure to diagnose Mr. Crawford with food poisoning" [*Id*. at 7]. Citing case and statutory law, it argues that EMTALA was deliberately circumscribed by Congress to address hospital intake and screening procedures—not to create a federal right of action for medical malpractice [*Id*. at 7–10]. Defendant also refers to the facts surrounding Mr. Crawford's treatment at Tennova, which it argues more than satisfy its obligations under EMTALA [*Id*. at 3, 19–21].

Plaintiffs respond in opposition, arguing that their amended complaint contains allegations regarding defendant's failure to provide a "protocol-required stool test" and defendant's "premature discharge" of Mr. Crawford "due to cash-paying status," in violation of EMTALA [Doc. 67, p. 3]. They repeatedly disavow defendant's characterization of their complaint as one sounding in negligence, instead contending that it focuses on defendant's "non-uniform screening and stabilization failures" [*Id*. at 5–9].

6

Defendant replies by noting that plaintiffs reiterate the same arguments they raised in their amended complaint, without citing legal authority that refutes defendant's description of EMTALA, and the limitations imposed on its private right of action [Doc. 69, p. 1].

### B. Legal Standard

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "Although this standard does not require 'detailed factual allegations,' it does require more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Specifically, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts "merely consistent with" liability, "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Finally, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663.

7

In reviewing a motion to dismiss under Rule 12(b)(6), the Court "must construe the complaint in a light most favorable to plaintiffs, accept all well-pled factual allegations as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). However, the Court need not accept legal conclusions or unwarranted factual inferences as true. *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). "'A legal conclusion couched as a factual allegation' need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." *Fritz v. Charter Twp. Of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citations omitted).

Further, on a Rule 12(b)(6) motion to dismiss, "[t]he moving party has the burden of proving that no claim exists." *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 433 (6th Cir. 2008). Put differently, "[a] Rule 12(b)(6) movant 'has the burden to show that the plaintiff failed to state a claim for relief.'" *Willman v. Att'y Gen. of United States*, 972 F.3d 819, 822 (6th Cir. 2020) (quoting *Coley v. Lucas Cnty.*, 799 F.3d 530, 537 (6th Cir. 2015)). "The movant's burden . . . is a burden of explanation; since the movant is the one seeking dismissal, it is the one that bears the burden of explaining—with whatever degree of thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim." *Metro. Gov't of Nashville & Davidson Cnty. v. Fed. Emergency Mgmt. Agency*, No. 3:22-CV-540, 2024 WL 1337189, at *3 (M.D. Tenn. Mar. 28, 2024).

8

### C. Analysis

To briefly summarize plaintiffs' amended complaint, they allege that Mr. Crawford presented to Tennova North on November 27, 2022, seeking emergency medical care for dehydration and suspected food poisoning [Doc. 60 ¶ 8]. Tennova allegedly triaged patients based on the severity of their condition, and Mr. Crawford was immediately admitted for treatment upon a determination that his condition was serious [*Id.* ¶ 10]. Plaintiffs allege that defendant "failed to provide adequate emergency care" to Mr. Crawford at several points, including his being restrained to a gurney for "several hours" and his physicians' refusal to conduct a stool test at Mrs. Crawford's request [*Id.* ¶¶ 11–13]. Ultimately, Mr. Crawford was discharged from Tennova on November 29, 2022, allegedly "without stabilizing his food poisoning" and "exacerbating his condition" [*Id.* ¶ 14]. After his discharge, plaintiffs allegedly obtained further proof that Tennova "intentionally concealed EMTALA violations" during their correspondence with defendant's personnel [*Id.* ¶¶ 15–23, 26–27].

Congress enacted EMTALA to "deal with the problem of patients being turned away from emergency rooms for non-medical reasons." *Bryan v. Rectors & Visitors of Univ. of Va.*, 95 F.3d 349, 351 (4th Cir. 1996). As the United States Court of Appeals for the Fourth Circuit has explained, "[o]nce EMTALA has met that purpose of ensuring that a hospital undertakes stabilizing treatment for a patient who arrives with an emergency condition, the patient's care becomes the legal responsibility of the hospital and the treating physicians," and "the legal adequacy of that care is then governed not by EMTALA but by

9

the state malpractice law that everyone agrees EMTALA was not intended to preempt." *Id.*; *see Kiser, ex rel. Austen v. Jackson-Madison Cnty. Gen. Hosp. Dist.*, No. 01-1259, 2002 WL 1398543, at *1 (W.D. Tenn. May 3, 2002) ("The legislative history of EMTALA reveals that Congress did not intend to displace state malpractice and tort law."). Of relevance here, the statute imposes liability where a hospital "(1) fail[s] to detect the nature of the emergency condition due to 'inappropriate' screening procedures; (2) fail[s] to stabilize a detected emergency condition before releasing the patient; [and/or] (3) fail[s] to appropriately transfer a patient when the individual so requests or when his physician believes that he will benefit from a transfer to another facility[.]" *Id*.

Plaintiffs allege that defendant violated each of these requirements [*See* Doc. 60].

### 1. Whether Plaintiffs State a Claim for Failure to Provide an Appropriate Medical Screening

EMTALA first requires a hospital to "provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition . . . exists." 42 U.S.C. § 1395dd(a). Where "a hospital provides care to the plaintiff that is no different than would have been offered to any patient, and, from all that appears, is 'within its capability' (that is, constitutes a good faith application of the hospital's resources), then the words 'appropriate medical screening' in the statute should not be interpreted to go beyond what was provided here," namely, "standard attention to a person who arrives at the emergency room." *Cleland v. Bronson Health Care Grp., Inc.*, 917 F.2d 266, 272 (6th Cir. 1990) (rehearing en banc

denied). In other words, a hospital's potential liability under this provision does not extend to the soundness of a provider's ultimate diagnosis or treatment of a patient.

*Cleland*, which both parties cite [*See, e.g.*, Doc. 66, p. 7; Doc. 60, p. 11], is instructive. *See* 917 F.2d at 266. In that case, a 15-year-old boy presented to a Michigan emergency room wherein he was incorrectly diagnosed with influenza. *Id*. at 268. Within 24 hours of his discharge, the young patient died due to an undiagnosed case of intussusception. *Id*. In affirming the district court's dismissal of the decedent's parents' complaint, the United States Court of Appeals for the Sixth Circuit interpreted "the vague phrase 'appropriate medical screening' to mean a screening that the hospital would have offered to any paying patient[.]" *Id*. Specifically, the Sixth Circuit instructed courts to screen for an improper motive on the part of a hospital provider, such that "[i]f it acts in the same manner as it would have for the usual paying patient, then the screening provided is 'appropriate' within the meaning of the statute." *Id*. at 272. In other words, despite the patient's tragic death, EMTALA does not allow "resort to a malpractice or other objective standard of care as the meaning of the term 'appropriate.'" *Id*.

With the benefit of hindsight some decades later, the Sixth Circuit explained its interpretation of "appropriate" in *Cleland* as "an effort to distinguish a cause of action under § 1395dd(a) from state-law claims for medical malpractice." *Elmhirst v. McLaren N. Mich.*, 726 F. App'x 439, 442 (6th Cir. 2018) (unpublished). While acknowledging other courts' criticism of the improper motive requirement, the appellate court ultimately

held that "*Cleland* remains the law in this circuit, and we are obligated to apply it." *Id.* at 444.

Construing the allegations in plaintiffs' amended complaint in the light most favorable to them, the Court ultimately finds that they have not adequately pled a claim for failure to provide an appropriate medical screening. *See Bishop*, 520 F.3d at 519. Plaintiffs, themselves, state that "Defendant documented their knowledge of an EMC" [Doc. 60 ¶ 37], meaning that Tennova "determine[d] whether or not an emergency medical condition . . . exist[ed]." 42 U.S.C. § 1395dd(a). And plaintiffs have not alleged any facts that would support a finding of improper motive on defendant's part upon Mr. Crawford's presentation to the emergency department. *See Cleland*, 917 F.2d at 266. To the contrary, they allege that defendant's personnel immediately admitted Mr. Crawford into the hospital for urgent treatment [Doc. 60 ¶ 10]. Plaintiffs' amended complaint, even if proven true, could not support a claim that defendant failed to provide Mr. Crawford with "standard attention," as with any other "person who arrives at the emergency room." *Cleland*, 917 F.2d at 272.

Plaintiffs' allegations regarding defendant's refusal to administer a specific test for food poisoning attempt to expand EMTALA liability in precisely the manner that the Sixth Circuit foreclosed in *Cleland*. They allege that "Defendant's complete failure to screen for STEC[2] deviates from any objective standard, as no reasonable hospital protocol would omit

---

[2] "STEC" refers to Shiga toxin-producing Escherichia coli, a type of bacteria that can cause severe illness. *See* About Escherichia coli Infection, Centers for Disease Control, https://www.cdc.gov/ecoli/about/index.html (accessed Aug. 20, 2025).

12

[such] diagnostic evaluation" [Doc. 60 ¶ 43], yet the *Cleland* court held that EMTALA does not allow "resort to a malpractice or other objective standard of care as the meaning of the term 'appropriate.'" 917 F.2d at 272. As this Court has stated before, "it appears that plaintiff's grievance is that he did not receive the type of medical treatment he believes he should have received. This claim does not fall under the protection of EMTALA because the statute does not guarantee a particular type of medical treatment that is to the plaintiff's liking; rather, EMTALA solely requires a participating hospital to take appropriate screening measures." *Mitchell v. Tennova Healthcare*, No. 3:13-CV-364, 2014 WL 1154233, at *5 (E.D. Tenn. Mar. 21, 2014) (Varlan, J.) (citation omitted) (citing *Cleland*, 917 F.2d at 271).

In sum, plaintiffs have failed to state a plausible claim that defendant failed to provide an adequate medical screening, and this count of their amended complaint is hereby **DISMISSED**. *See* Fed. R. Civ. P. 12(b)(6).

### 2. Whether Plaintiffs State a Claim for Failure to Stabilize an Emergency Medical Condition

If, upon completion of an appropriate medical screening, a hospital determines an individual has an emergency medical condition, EMTALA requires hospitals to provide "such further medical examination and such treatment as may be required to stabilize the medical condition" or to transfer the individual to an appropriate medical facility. 42 U.S.C. § 1395dd(b)(1). The term "to stabilize" is further defined as "to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from

13

or occur during the transfer of the individual from a facility[.]" *Id*. at § 1395dd(e)(3)(A). As the Sixth Circuit has explained, this provision prevents hospitals from "circumvent[ing]" EMTALA by "admitting an emergency room patient to the hospital, then immediately discharging that patient." *Thornton v. Sw. Detroit Hosp.*, 895 F.2d 1131, 1135 (6th Cir. 1990). Instead, "[e]mergency care must be given until the patient's emergency medical condition is stabilized." *Id*.

While a plaintiff who brings a failure to stabilize claim is not required to demonstrate a hospital's improper motive as in a § 1395dd(a) claim, he must show that "a hospital (including any of its agents or employees) had actual knowledge of that [*sic*] an emergency medical condition existed" in order to "trigger the stabilization obligation." *Burd ex rel. Burd v. Lebanon HMA, Inc.*, 756 F. Supp. 2d 896, 906 (M.D. Tenn. 2010). As the United States District Court for the Middle District of Tennessee has explained, "only actual knowledge of an emergency medical condition . . . not simply the existence of facts that should have put Defendant on notice—triggers a duty to stabilize a patient." *Id*.

As a threshold matter, the Court finds that plaintiffs have adequately pleaded facts sufficient to trigger the stabilization requirement. Defendant argues that its medical personnel lacked actual knowledge of Mr. Crawford's underlying condition such that the stabilization requirement never arose [*See* Doc. 66, pp. 16–17].[3] But the Court must accept

---

[3] This argument is not meritless. At times, plaintiffs allege that defendant's personnel possessed a level of awareness falling below the actual knowledge required under EMTALA. *See Burd*, 756 F. Supp. 2d at 906 (holding that a claimant must show the hospital had actual knowledge of emergency medical condition to trigger the stabilization obligation). For example, they allege that defendant possessed "knowledge of symptoms that mirrored STEC symptoms" [Doc. 60 ¶ 23], which, on its own, is not enough to trigger the stabilization obligation.

Case 3:24-cv-00382-TAV-DCP    Document 91    Filed 08/29/25    Page 14 of 19
PageID #: 997

all well-pled factual allegations as true when reviewing a motion to dismiss, *see Bishop*, 520 F.3d at 519, and here plaintiffs allege both that Mr. Crawford experienced an emergency medical condition and that his treating physicians knew as much [Doc. 60 ¶¶ 49, 52]. *Cf. Elmhirst v. McLaren N. Michigan*, No. 1:17-CV-374, 2017 WL 4535714, at *4 (W.D. Mich. July 19, 2017), *aff'd*, 726 F. App'x 439 (6th Cir. 2018) (granting hospital's motion to dismiss where plaintiff pled that provider had not determined whether an emergency medical condition existed in the first place). And to whatever extent plaintiffs allege a range of symptoms connected to Mr. Crawford's emergency condition [*See, e.g.*, *id.* ¶¶ 8, 9, 13, 42, 43], such diffuse allegations do not, as defendant contends [*See* Doc. 66, p. 15], render their claim implausible.

Like their allegations in support of Count 1, several of plaintiffs' allegations in support of Count 2 reflect the view "that he did not receive the type of medical treatment he believes he should have received." *Mitchell*, 2014 WL 1154233, at *5. For example, they allege that defendant failed to provide "adequate fluid therapy" and administered antibiotics despite their claim that such medication was "irrelevant to stabilizing his EMC" [Doc. 60 ¶¶ 49, 51]. As stated previously in the Court's analysis of plaintiffs' Count 1 (*see supra* Section III(C)(1)), these allegations fall outside the scope of liability created by EMTALA. In the stabilization context, specifically, the Court reiterates that while defendant must provide emergency care "until the patient's emergency medical condition is stabilized," *Thornton*, 895 F.2d at 1135, the federal statute does not prescribe specific stabilizing treatments or procedures to which a patient is entitled.

While some allegations fall outside the bounds of EMTALA, plaintiffs do allege that upon discharge from the hospital, "Mr. Crawford's food poisoning EMC remained unstabilized, as evidenced by his ongoing symptoms (e.g., vomiting, weakness) and subsequent confirmation of untreated STEC and C. diff, and contraindicated antibiotics, leading to material deterioration" [Doc. 60 ¶ 52 (citation omitted)]. This allegation approaches plausibility because it pertains to defendant's discharge of Mr. Crawford without satisfying the "reasonable medical probability" standard reflected in EMTALA's stabilization provision. *See* 42 U.S.C. §§ 1395dd(b), 1395dd(e)(3)(A). But there is a distinction between discharge prior to a patient's full recovery and discharge that is premature in violation of EMTALA's stabilization requirement; that is, ongoing symptoms at the time of a patient's discharge do not, on their own, establish a failure to stabilize. *See Thornton*, 895 F.2d at 1134 (noting the district court's holding that "[EMTALA] was not intended to require hospitals to bring patients to complete recovery, but to require hospitals to give emergency room treatment"). Although plaintiffs allege Mr. Crawford "remained unstabilized," the Court need not, for purposes of dismissal, accept that legal conclusion as true. *See Montgomery*, 346 F.3d at 698. And upon careful review of their factual allegations in support of this conclusion, the Court finds that plaintiffs have failed to state a plausible stabilization claim. During his three-day hospital stay, plaintiffs previously alleged that Tennova obtained lab work, blood cultures, and a urine screen from Mr. Crawford, as well as a CT scan of his chest, abdomen, pelvis, and brain, in addition to delivering antibiotics and other medical treatments [*See* Doc. 1 ¶¶ 117, 124, 175, 190,

16

228].[4]  On the date of Mr. Crawford's discharge, plaintiffs also allege that Mrs. Crawford declined "several expensive tests" that the hospital recommended [*Id*. ¶¶ 63, 72].

Construing plaintiffs' own allegations regarding the care that Mr. Crawford received at Tennova in the light most favorable to them, the Court finds that they "can prove no set of facts in support of [these] allegations that would entitle them to relief," under EMTALA's stabilization provision.  *Bishop*, 520 F.3d at 519.  While the Court has not been made aware of another case in which an EMTALA claimant declined medical treatment offered by a hospital during a patient's stabilization, this allegation appears particularly detrimental to plaintiffs' stabilization theory.  Regardless of the veracity of plaintiffs' allegation that the tests offered by defendant were "expensive" [Doc. 60 ¶ 14],[5] EMTALA's requirement that a hospital "provide such further medical examination and such treatment as may be required to stabilize the medical condition" seems to assume that patients will authorize said medical treatment.  42 U.S.C. § 1395dd(b)(1)(A).  Indeed, the

---

[4] "Generally, amended pleadings supersede original pleadings." *Engle v. City of Cuyahoga Falls*, No. 5:14-CV-1161, 2015 WL 3852143, at *4 n.3 (N.D. Ohio June 22, 2015) (quoting *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 617 (6th Cir. 2014)) (citing 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed. 2010)).  However, as the United States District Court for the Northern District of Ohio noted in *Engle*, "the Sixth Circuit found that the general rule is inapplicable where a trial court instructs a party to re-plead to omit certain claims that have been dismissed.  *Id*. (citing *Howard*, 759 F.3d at 618).  Here, the Court instructed plaintiffs to re-plead to omit certain claims that have been dismissed [*See* Doc. 57, p. 14].  Mindful of its obligation to liberally construe *pro se* pleadings and to construe plaintiffs' allegations in the light most favorable to them for purposes of dismissal, *see Bishop*, 520 F.3d at 519, the Court has reviewed both plaintiffs' original and amended complaints.

[5] The Honorable Nathaniel R. Jones, United States Circuit Judge, addressed the question of indigency in the EMTALA stabilization context in his concurring opinion to *Thornton*, stating that, "[EMTALA] was designed to prevent hospitals from either turning down or 'dumping' indigent patients.  It was not a measure to force hospitals to provide long-term care for uninsured patients."  *Thornton*, 895 F.2d at 1135 (Jones, J., concurring).

17

statute expressly deems a hospital to have met the stabilization requirement if it offers "further medical examination and treatment" to a patient who then "refuses to consent to the examination and treatment." *Id*. at § 1395dd(b)(2). And to the extent that a patient disagrees with a specific treatment, as discussed multiple times herein, "the legal adequacy of that care is then governed not by EMTALA but by the state malpractice law that everyone agrees EMTALA was not intended to preempt." *Bryan*, 95 F.3d at 351; *see Mitchell*, 2014 WL 1154233, at *5.

In sum, plaintiffs have failed to state a plausible claim that defendant failed to stabilize Mr. Crawford's emergency medical condition, and this count of their amended complaint is hereby **DISMISSED**. *See* Fed. R. Civ. P. 12(b)(6).

### 3. Whether Plaintiffs State a Claim for Failure to Transfer

Based upon the Court's analysis and ultimate dismissal of plaintiffs' second claim (*see supra* Section III(C)(2)), their third and final claim is also due to be dismissed. If an individual's emergency medical condition has not been stabilized, EMTALA imposes further requirements on hospitals to prevent the premature transfer of patients. *See* 42 U.S.C. § 1395dd(c). This provision also provides for "appropriate transfer[s]" that must meet certain criteria. *See id*. at § 1395dd(c)(2). Because the Court determined that plaintiffs' amended complaint fails to state a claim upon which relief could be granted for failure to stabilize prior to discharge, this third claim necessarily fails, as well, because it only arises where "an emergency medical condition . . . has not been stabilized." *Id*. at

18

§ 1395dd(c)(1). Accordingly, this count of their amended complaint is hereby **DISMISSED**. *See* Fed. R. Civ. P. 12(b)(6).

IV.     **Remaining Pending Motions [Docs. 68, 70, 76, 81, 82]**

Given that the Court has dismissed plaintiffs' amended complaint in its entirety (*see supra* Section III), the parties' remaining pending motions [Docs. 68, 70, 76, 81, 82] are hereby **DENIED as moot**.

V.     Conclusion

For the reasons explained above, plaintiffs' Motion for Reconsideration of Court's Order [Doc. 59] is **DENIED**, defendant's Motion to Dismiss Plaintiffs' First Amended Complaint [Doc. 65] is **GRANTED**, the remaining pending motions [Docs. 68, 70, 76, 81, 82] are **DENIED as moot**, and this case is **DISMISSED**. An appropriate order shall enter.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE